# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

WALLACE ROBINSON                                                                PLAINTIFF
ADC #169328

v.                              No. 4:19-CV-780-DPM-JTR

MONTE MUNYAN, Nurse,
Faulkner County Detention Center, *et al.*                                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court **within fourteen (14) days** of the date of this Recommendation. If you do not file objections, Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

On November 4, 2019, Wallace Robinson ("Robinson"), proceeding *pro se*, initiated this § 1983 action alleging that he received constitutionally inadequate medical care while incarcerated at Faulkner County Detention Center ("FCDC"). *Doc. 2*. After screening the Complaint and Amended Complaint, Robinson was

allowed to proceed with his claim that Nurse Monte Munyan allegedly "withheld several doses of prescribed medication" for his high blood pressure. *Doc. 13 at 2*.

On November 25, 2020, counsel for Nurse Munyan filed a Notice of Suggestion of Death stating that Nurse Munyan passed away on October 7, 2020. *Doc. 20*. Attached to the Notice was Nurse Munyan's obituary which noted he was "survived by his loving wife of 26 years, Karen Munyan." *Doc. 20-1*. Under Rule 25(a)(1) of the Federal Rules of Civil Procedure, Robinson had 90 days, or until February 23, 2021, to file a Motion to Substitute Nurse Munyan's estate. Robinson did not do so.

On February 19, 2021, counsel for Nurse Munyan filed a Motion for Summary Judgment (*Doc. 21*), Brief in Support (*Doc. 22*), and Statement of Undisputed Facts (*Doc. 23*). In the summary judgment papers, counsel argued that Nurse Munyan was entitled to summary judgment, *on the merits*, because he was not deliberately indifferent to Robinson's serious medical needs related to his alleged failure to receive high blood pressure medication for three days. Nurse Munyan also argued that Robinson's claim should be dismissed, *on procedural grounds*, because he failed to amend his Complaint to add Nurse Munyan's estate by the February 23, 2021 deadline.

On March 18 and 22, 2021, Robinson filed Motions for Extension of Time. In the Motions, Robinson claimed that he was not receiving any legal mail from

approximately May 28, 2020 until February 19, 2021 when he received Nurse Munyan's summary judgment papers. *Doc. 27; Doc. 29*. Robinson requested additional time to file a Response to Nurse Munyan's Motion for Summary Judgment and an "extension on discovery and service to Doe Defendant." *Doc. 29*. In this Motion, Robinson did *not* request an extension of time to file a Motion to Substitute Nurse Munyan's estate for Nurse Munyan, even though it was now three weeks past the deadline for filing that Motion.

In an Order dated April 1, 2021, I gave Robinson until April 16 to respond to Nurse Munyan's Motion for Summary Judgment. *Sua sponte* I also gave Robinson another 90 days—*until June 30, 2021*—"to file [the] Motion for Substitution." In this Order, I cautioned Robinson that if he failed to file the Motion to Substitute, his claims against Nurse Munyan would be dismissed. *Doc. 32 at 4*.

In an Order dated April 22, 2021, I reminded Robinson that he had "until June 30, 2021 to file a Motion to Substitute a proper party for Monte Munyan." To assist Robinson with filing the Motion to Substitute, I gave him the following specific directions: (1) he would need "to substitute the personal representative of Mr. Munyan's estate for Mr. Munyan in this action [by]…fil[ing] a Motion [to] Substitute that complies with Fed. R. Civ. P. 25(a)" (*Doc. 36 at 1*); and (2) "[T]here is an open probate proceeding for Mr. Munyan's Estate in Faulkner County, Arkansas. *See* Estate of Monte John Munyan, Faulkner County Circuit Court No.

23PR-20-607." *Id. at 1, n. 1*. Thus, Robinson was on *actual notice* that he must substitute the personal representative for Munyan's estate by obtaining the name of the personal representative from the Faulkner County Circuit Court Clerk and then file his Motion to Substitute by June 30, 2021.

Despite my instructions and reminders, Robinson did *not* file a Motion to Substitute by the June 30 deadline. Robinson also failed to file a Response to Nurse Munyan's Motion for Summary Judgment and failed to name the Doe Defendant.

Accordingly, on July 1, I filed a Recommended Disposition ("RD") which suggested that Robinson's claims against Nurse Munyan and the Doe Defendant be dismissed, without prejudice. *Doc. 39*. The RD stated that Robinson had fourteen days—*until July 15, 2021*—to file his "Objections" to the RD and, if he failed to do so Judge Marshall could adopt the RD based on Robinson's failure to file timely objections. *Doc. 39 at 1*. Robinson did not file any objections to the RD.

Instead, in a letter to the Clerk of the Court, dated July 24, 2021, Robinson stated the following: "I received a letter stating that I needed to name the estate of Mr. Munyan, which I did and sent back to the court. I haven't received any acknowledgment th[at] it was received." *Doc. 43*.[1] The Clerk's office did not receive this letter from Robinson until July 30. *Id.*

---

[1] Robinson did *not* receive a "letter" from the Court directing him to "name the estate of Mr. Munyan." Rather, he received my Order, dated April 1, 2021 directing him to substitute Nurse Munyan's estate for Nurse Munyan (*Doc. 32*), followed by my April 22, 2021 Order (*Doc. 36*).

4

In the meantime, on July 28, Judge Marshall adopted the RD and entered a final Order (*Doc. 40*) and Judgment (*Doc. 41*) dismissing all of Robinson's claims, without prejudice.[2]

In a second letter to the Clerk, dated July 30, Robinson stated that: (1) He had received the July 28 Order and Judgment; and (2) He was "not aware of any procedural problems that would call for a dismissal." *Doc. 44*.[3] He requested "relief from the [J]udgment so that [he] may correct this issue." *Id.*

On August 6, Judge Marshall denied Robinson's request for relief from Judgment because the case file did not reflect a Motion to Substitute the estate of Nurse Munyan. However, Judge Marshall allowed Robinson until *August 20, 2021* to resubmit a Motion to Substitute. *Doc. 45*. Judge Marshall also ordered Robinson to "tell the Court when he mailed the original motion." *Id.*

On August 23—*three days after Judge Marshall's August 20 deadline* and 271 days after the Notice of Suggestion of Nurse Munyan's death was filed—

---

[2] My RD suggested that Nurse Munyan be granted summary judgment because Robinson failed to timely file a Motion to Substitute Munyan's Estate following his death on October 7, 2020. *Doc. 39*. In Judge Marshall's Order adopting the RD, he clarified that Robinson's claims against Nurse Munyan and the Doe Defendant "must be dismissed because of the procedural problems noted" in the RD (Robinson's failure to file a timely Motion to Substitute as required by Rule 25(a)(1) and to identify the Doe Defendant). *Doc. 40*. Accordingly, Judge Marshall did not decide the merits of Nurse Munyan and the Doe Defendant's Motion for Summary Judgment, which was dismissed, without prejudice.

[3] Robinson does not dispute that he received the July 1 RD, which specifically explained to him the *procedural problem* that warranted the dismissal of his claims against Munyan. Thus, he clearly *was aware* of those problems but elected *not* to file a Response objecting to the RD within the specified fourteen days.

Robinson filed an *untimely* Motion to Substitute "naming Katherine Munyan" as the person he believed (erroneously) represented the estate of the deceased Defendant Munyan.[4] *Doc. 46*. In this Motion, Robinson stated that he originally submitted a Motion to Substitute "sometime during the month of June, 2021 naming Katherine Munyan as the estate." *Id*. However, Robinson attached no documentation or other evidence to support this assertion or that otherwise explained *why* his "original" submission of this Motion was *not* filed, or *why* his failure to promptly receive a file-marked copy of that Motion from the Clerk did not alert him to the alleged filing problem by or about June 30.

In an Order, dated September 2, 2021, Judge Marshall noted Robinson's recently filed Motion to Substitute. The Court vacated the "28 July 2021 Judgment and final Order as to Munyan" and instructed the Clerk to reopen the case. *Doc. 47*. Finally, Judge Marshall referred Robinson's August 23 Motion to Substitute to me for a recommendation on whether it should be granted. *Id*. Before addressing that

---

[4] Apart from being untimely, Robinson's Motion to Substitute is facially defective to the extent it names "Katherine Munyan" as the representative for the Munyan estate. *Doc. 46*. According to publicly available records (which the Court directed Robinson to in one of its earlier Orders), the Special Administrator of the Estate of Monte John Munyan is either "Timothy Giattina" or "Karen Munyan"—*not* "Katherine Munyan." *See In The Matter of: Estate of Monte John Munyan, Deceased*, No. 23PR-20-607 (Faulkner Co., Ark. Nov. 11, 2020) (court records publicly available at "CourtConnect" on the Arkansas Judiciary's homepage: caseinfo.arcourts.gov (last visited Nov. 16, 2021)). Furthermore, Nurse Munyan's obituary, which was filed as an attachment to the Notice of Suggestion of his Death (*Doc. 20*), identifies *Karen Munyan* as the surviving spouse of Nurse Munyan. Robinson has never disputed having received the Notice of Suggestion of Death in late November of 2020.

Motion, it is important to understand a miscalculation on my part that created this procedural quagmire.

In drafting the July 1 RD, I incorrectly assumed that the most direct way to dispose of Robinson's remaining claims against Nurse Munyan and the Doe Defendant was on the *procedural grounds* that he: (1) failed to properly and timely substitute the estate of Nurse Munyan; and (2) to provide the name and address of the Doe Defendant. Accordingly, my July 1 RD on Robinson's claim was limited to recommending that Defendants' Motion for Summary Judgment be granted *on procedural grounds*.

Of course, my RD could have addressed and decided Nurse Munyan's alternative argument that Robinson's inadequate medical care claim failed, *on the merits*. I did not address that separate and independent ground for summary judgment because my crystal ball was clouded and failed to foresee that Robinson would *not* file any objections to my RD, but later would use two letters sent to Judge Marshall in late July and August, to argue that he allegedly submitted a timely Motion to Substitute "sometime during the month of June 2021." These unforeseen developments and the benefit of hindsight now make it clear that my RD also should have addressed the argument in Munyan's Motion for Summary Judgment that he was also entitled to judgment *on the merits* of Robinson's inadequate medical care claim against him.

For the reasons explained below, I recommend, *sua sponte*, that Defendant Munyan's Motion for Summary Judgment *on the merits* of Robinson's inadequate medical care claim be GRANTED. I further recommend that Robinson's Motion to Substitute be DENIED.

## II. Discussion

### A. Nurse Munyan's Motion for Summary Judgment, On the Merits of Robinson's Inadequate Medical Care Claim, Should Be Granted.

Robinson's only claim against Nurse Munyan is that he failed to provide Robinson with his high blood pressure medication for three days in June of 2019 while he was incarcerated in the FCDC. *Doc. 2; Doc. 9*. Because that claim fails, *as a matter of law*, the Motion should be granted.

On February 19, 2021, counsel for Nurse Munyan and Faulkner County filed a Motion for Summary Judgment (*Doc. 21*), Brief in Support (*Doc. 22*), and Statement of Undisputed Facts (*Doc. 23*), which were supported by an Affidavit, relevant FCDC policies, and Robinson's deposition testimony and FCDC file. (*Doc. 23*). Robinson requested and received *multiple* extensions of time to respond to those summary judgment papers but ultimately did not do so. *See Doc. 32; Doc. 34*. Because Robinson did *not* object to or dispute *anything* in Defendants' Statement of Undisputed Facts, he is deemed to have admitted *all of those facts*. *See* Local Rule 56.1(c), Local Rules of the United States District Court for the Eastern District of Arkansas.

Among the facts that Robinson has now admitted are the following:

1. "***All decisions regarding medications … are left to the professional medical judgment of the physician at [FCDC]***." *Doc. 23 at 3, ¶ 19* (emphasis in original).

2. "Dr. Stewart is the [FCDC] physician. He provides medical treatment and services for inmates at the [FCDC]." *Doc. 23 at 3, ¶ 16.*

3. "[Robinson] never spoke to Defendant Munyan regarding his blood pressure medication during his incarceration [at FCDC]." *Doc. 23 at 1, ¶ 6.*

It is clear from Robinson's pleadings and deposition that *he erroneously assumed* that Nurse Munyan was responsible for making the decisions regarding the medications he received while he was a prisoner in FCDC.[5] However, the undisputed and now admitted facts establish that it was actually *Dr. Stewart* who made the decisions related to Robinson's blood pressure medication during the three days in

---

[5] *According to Robinson's own deposition testimony*, Nurse Munyan never saw, spoke, or examined him during his three-day incarceration at the FCDC. *Doc. 23-4 at 17.* To prove a claim of deliberate indifference to a serious medical need, Robinson was required to prove that Nurse Munyan had actual knowledge of a substantial risk of harm to Robinson's health and knew that his actions (or failure to act) "was inappropriate in light of that risk." *Davis v. Buchanan Cty., Missouri*, 11 F.4th 604, 624 (8th Cir. 2021).

Finally, there is no indication that Robinson ever relayed the alleged seriousness of his medical condition to Nurse Munyan. Furthermore, even if Nurse Munyan had been aware that Robinson had a serious medical need and had the authority to decide whether Robinson could receive his high blood pressure medication, there is "no evidence… that [Nurse Munyan] knew that a [three-day] delay in [Robinson] taking his medication would have any adverse effect." *Jolly v. Badgett*, 144 F.3d 573, 573 (8th Cir. 1998).

question.[6] Having admitted that *it was the physician* at the FCDC—*not* Nurse Munyan—who was responsible for making the decision about whether he was supposed to receive high blood pressure medication, Robinson's inadequate medical care claim against Nurse Munyan fails on the merits, as a matter of law.

Accordingly, Defendants' Motion for Summary Judgment on Robinson's inadequate medical care claims against Nurse Munyan should be granted.

### B. Robinson's Motion To Substitute Should Be Denied Because His Failure To Timely File The Motion Was Not A Result Of Excusable Neglect.

Rule 25(a)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party dies and the claim is not extinguished," a Motion to Substitute a party for the decedent must be "made within 90 days after service of a statement noting the death," or "the action . . . against the decedent *must* be dismissed." (Emphasis added). "Although the ninety-day rule appears to be mandatory, the district court has the discretion under Rule 6(b) [of the Federal Rules of Civil Procedure] to permit an untimely motion for substitution if the failure to file the motion resulted from

---

[6] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, *the nonmoving party must present specific facts demonstrating that there is a material dispute for trial*. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

excusable neglect." *Pierce by Guardian v. Pemiscot Mem'l Health Sys.*, 657 F. App'x 613, 615 (8th Cir. 2016) (internal citations and quotation marks omitted).

In considering whether to grant Robinson's belated Motion to Substitute, it is important to remember this Motion was originally supposed to be filed on February 23, 2021—ninety days after counsel for Nurse Munyan filed and served the Notice of Suggestion of Death on November 20, 2020. *Doc. 20*. On March 22, 2021, almost a month after that deadline, Robinson filed a Motion to extend the deadline for discovery and for service on the Doe Defendant, based on the vague and unsubstantiated claim he was not receiving mail from the Court from May 28, 2020 to February 19, 2021.[7] Although his Motion mentioned nothing about not receiving the Notice of Suggestion of Death, I gave Robinson the benefit of the doubt and entered an Order extending the original ninety-day filing deadline for filing a Motion to Substitute from February 23, 2021 to June 30, 2021. This was but the first of many times that Robinson would provide excuses for missing important filing deadlines.

In considering whether to grant the belated Motion to Substitute, the narrow issue is whether Robinson's long delay in finally filing that Motion was the result of "excusable neglect."

---

[7] When mail from the Court is undeliverable to a prisoner, the mail is returned to the Clerk's office and a copy of the undelivered mail is docketed as "Mail Returned Undeliverable." No such docket entry appears in this action.

11

As explained below, Robinson's pleading history in this case demonstrates that he does not treat filing deadlines seriously and sees no need to diligently bring important matters to the Court's attention in a timely fashion. Because nothing about Robinson missing both the June 30 and August 20 filing deadlines suggests anything that might constitute "excusable neglect," his Motion to Substitute should be denied.

Even if I take Robinson at his word that he did, in fact, "send" a Motion for Substitution to the Court "sometime during the month of June,"[8] he still should have been able to accomplish *the actual filing of that Motion*, on or near the June 30, 2021, if he had acted with even a little diligence.

Because Robinson is a *pro se* prisoner, without access to the Court's electronic filing system, documents he sends to the Court are deemed filed when they are

---

[8] Robinson has never provided *any documentation* to support his vague and suspiciously convenient excuse for not meeting the filing deadlines for the Motion to Substitute. If he actually mailed the Clerk of Court a Motion to Substitute in June 2021, as he claims, there are only four possibilities for why it was not filed and docketed, none of which are plausible: (1) the Clerk received the Motion to Substitute but failed to docket and file it—something that is extremely unlikely, given the efficiency of the Clerk's Office; (2) the envelope he used to mail the Motion did not provide the correct mailing address or proper postage, in which case it would have been returned to Robinson, with the mailing deficiency noted on the returned envelope, and he would have then provided that evidence to the Court to support his claim; (3) some unknown nefarious actor intentionally interfered with his mail; or (4) Robinson's Motion was part of the exceedingly small percentage of mail that gets lost in transit by the USPS. *See* U.S. POSTAL SERV. OFF. OF INSPECTOR GEN., AUDIT REPORT: MS-AR-16-001 (Dec. 1, 2015), https://www.uspsoig.gov/sites/default/files/document-library-files/2015/MS-AR-16-001.pdf (last visited Nov. 16, 2021) (indicating that the Mail Recovery Center—"the U.S. Postal Service's official lost and found department"—received 88 million items in fiscal year 2014) and U.S. POSTAL SERV., POSTAL FACTS: A DECADE OF FACTS AND FIGURES, https://facts.usps.com/table-facts/ (last visited Nov. 16, 2021) (stating that the total mail volume processed by USPS in fiscal year 2014 was 155.5 billion items).

*delivered* to the Clerk of the Court.[9] *See* Fed. R. Civ. P. 5(d)(2). Under Clerk's office policy, every time a filing is received from a *pro se* prisoner, the document is docketed and a mailing label, with the prisoner's current mailing address, is printed for use in returning a file-marked copy of the document to the prisoner. If the document is filed before 3:30pm, the file-marked copy is placed in the mail that day. Otherwise, the file-marked copy is mailed on the following day. This long-established procedure allows *pro se* prisoners to know, *within about two to five business days*, if their submissions to the Clerk have been received and docketed— or conversely, if their document *has not* been received and docketed.[10]

If nothing else, Robinson is an experienced *pro se* litigant. In addition to this case, Robinson has five other federal lawsuits in the Eastern District of Arkansas.[11]

---

[9] The prison mailbox rule applies only to: (1) notices of appeal (Fed. R. App. P. 4(c)(1)); (2) habeas petitions (*Nichols v. Bowersox*, 172 F.3d 1068, 1077 (8th Cir. 1999) (en banc), abrogated on other grounds by *Riddle v. Kemna*, 523 F.3d 850 (8th Cir. 2008)); (3) § 2255 motions (*Moore v. United States*, 173 F.3d 1131, 1135 (8th Cir. 1999)); and (4) § 1983 *complaints* (*Sulik v. Taney Cty., Mo.*, 316 F.3d 813, 815 (8th Cir. 2003), overruled on other grounds, 393 F.3d 765 (8th Cir. 2005)). Thus, Robinson cannot claim the benefit of the prison mailbox rule. Furthermore, even if he could, Robinson clearly failed to comply with the stringent requirements of that rule. *See Grady v. United States*, 269 F.3d 913, 916 (8th Cir. 2001) ("a prisoner seeking to benefit from the prison mailbox rule must satisfy the requirements of Rule 4(c) [of the Federal Rules of Appellate Procedure].")

[10] For example, in this case, Judge Marshall entered his Order and Judgment on July 28, 2021. *Doc. 40; Doc. 41*. In a letter, dated two days later on July 30, 2021, Robinson wrote the Clerk about the "procedural problems" referred to in Judge Marshall's Order and Judgment as the basis for dismissing the case. *Doc. 44*. This makes it clear Robinson received the Order and Judgment within two days after it was mail.

[11] *Robinson v. Straugn et al.*, 5:19-CV-10-DPM (E.D. Ark. Jan. 7, 2019); *Robinson v. Wilson et al.*, 4:20-CV-392-BSM (E.D. Ark. Apr. 9, 2020); *Robinson v. Lubin et al.*, 4:21-CV-89-

In total, Robinson has filed more than 80 documents with the Clerk's office in those cases. Thus, he is well aware of the Clerk's procedure for *promptly* transmitting to him a file-marked copy of his pleadings and papers.[12] *If* Robinson mailed a Motion to Substitute "sometime…[in] June, 2021," as he alleges, his first indication that the Motion had not been filed by the Clerk would have been sometime on or shortly after June 30, when he failed to receive a file-marked copy of that document from the Clerk. Robinson's obligation to prosecute this action "diligently,"[13] required him to take *prompt action* to call this matter to the Court's attention and explain why he had missed that important filing deadline. Robinson took *no such action* until the end of July, shortly before Judge Marshall entered the July 28 Order and Judgment dismissing the case.

Finally, Robinson does *not* contest receiving the July 1 RD which *explicitly explained* that his case should be dismissed because "[Robinson] has not filed the required Motion for Substitution, and the time to do so has expired." *Doc. 39 at 6*. The RD also made it clear to Robinson that he must file "Objections," *within fourteen days*, if he disagrees with anything contained therein, and his failure to do

---

JM (E.D. Ark. Feb. 3, 2021); *Robinson v. Page et al.*, 4:21-CV-235-JM (Mar. 25, 2021); *Robinson v. Clark et al.*, 4:21-CV-674-KGB-PSH (E.D. Ark. July 27, 2021).

[12] Robinson admits this fact in his July 24 letter to the Court, when he states that he had not received any "acknowledgement" that his June Motion to Substitute was received. *Doc. 43*.

[13] Under Local Rule 5.5(c)(2), it is the duty of *pro se* plaintiffs "to monitor the progress of the case, and to prosecute or defend the action *diligently*."

so could result in the Court adopting the RD. Thus, Robinson was on *actual notice* that he needed to file objections to the RD, *on or before July 15, 2021,* if he wished to call to the Court's attention the phantom Motion to Substitute that he allegedly submitted "sometime…[in] June," but somehow never got filed by the Clerk. Robinson did *not* file any Objection to the RD, or otherwise attempt to call the matter to the Court's attention until the Court received his July 30 letter claiming he had attempted to file a Motion to Substitute "sometime…[in] June." *Doc. 43; Doc.44.* In other words, it was only *after* Robinson realized his case was about to be dismissed, based on his lack of diligence in meeting filing deadlines, that he came up with the improbable and belated story of submitting a phantom Motion for Substitution "sometime…[in] June," that was never filed by the Clerk. Nothing about Robinson's *repeated failures to act* suggests *any* "diligence" on his part. All of this also strongly suggests his story about the phantom Motion to Substitute submitted "sometime…[in] June" is made of "the whole cloth."

Accordingly, Robinson's Motion to Substitute should be denied as untimely.

### III. Conclusion

IT IS THEREFORE RECOMMENDED that:

A. Defendant Munyan's Motion for Summary Judgment (*Doc. 21*) be GRANTED, and Robinson's inadequate medical care claim against Defendant Munyan be dismissed, without prejudice;

B.  Robinson's Motion to Substitute (*Doc. 46*) be DENIED; and

C.  The Court enter a final Order and Judgment in favor of Defendant Munyan.

DATED this 16th day of November, 2021.

_____
UNITED STATES MAGISTRATE JUDGE